**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| LORRI WALTON OSIBODU, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>GXO LOGISTICS SUPPLY CHAIN, INC.,<br><br>      Defendant. | CASE NO. 1:23-cv-01813-MKK-JRS<br><br>Magistrate Judge<br>Hon. M. Kendra Klump<br><br>**CLASS ACTION** |

<u>**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION**</u>
<u>**SETTLEMENT AGREEMENT AND RELEASE AND MEMORANDUM IN SUPPORT**</u>

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff Lorri Walton Osibodu, by counsel, respectfully requests this Court grant final approval of the class action settlement agreement reached in this matter and previously preliminarily approved by this Court on August 1, 2025. (Dkt. 72).

**I.      Factual and Procedural Background Relevant to this Motion[1]**

This action was initiated by Lorri Walton Osibodu on September 12, 2023 in the Hendricks Superior Court as a putative class action on behalf of current and former employees of GXO Logistics Supply Chain, Inc. at its Clayton, Indiana facility, asserting theories of breach of contract on behalf of the Class, violations of Indiana's wage statutes on behalf of the Subclass, and violations of the Fair Labor Standards Act on behalf of only Ms. Osibodu. (Dkt. 1-1 at pp.6-12). These claims were asserted against GXO Logistics Supply Chain, Inc. ("GXO"), generally asserting that GXO had failed to pay certain employees shift differentials.

---

[1]   A more detailed recitation of the factual and procedural background was provided in the *Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement and Release*. [Dkt. 66].

The matter was removed to this Court on October 9, 2023. *See* (Dkt. 1). Following a full-day mediation and subsequent continued efforts, the Parties reached an agreement on terms that provide complete relief to all members of a defined class and substantial additional relief to a subclass of persons through a statutory enhance ement under the Indiana Wage Payment Statute, Ind. Code §§ 22-2-5-1 *et seq.*, under Plaintiff's theories and assumptions. On August 1, 2025, the Court granted preliminary approval of the class-action settlement. (Dkt. 72).

The Class and Subclass are defined as:

**Plaintiff Class**

All current or former hourly employees of GXO Logistics Supply Chain, Inc. who worked at the Clayton, Indiana facility at any time from September 12, 2021, to August 1, 2025 (i.e., the date of Preliminary Approval).

**Plaintiff Subclass**

All members of the Plaintiff Class who were not involuntarily separated from their employment with GXO Logistics Supply Chain, Inc. prior to April 3, 2025.

(Dkt. 65 at 2–3).

In granting preliminary approval, the Court succinctly summarized the general settlement terms:

The settlement agreement creates a "Settlement Fund" of $1,050,000. (Dkt. 65-1 at 9, ¶28). From this fund, Class Counsel can seek up to one-third of the Settlement Fund (i.e., $350,000) as compensation for their fees, as well as reimbursement for costs accrued in prosecuting the case (currently estimated at $4,219.45). (*Id.* at 6–7, ¶¶16, 20). In addition, the proposed Class Representative (i.e., Plaintiff Osibodu) can seek up to $5,000 from the Settlement Fund as an incentive payment, (*id.* at 7, ¶19), and the Court can allocate money from the Settlement Fund to be used to administer the fund (administrative fees are estimated at $18,400), (*id.* at 6–7, ¶17). After all of these amounts (collectively, the "Allocated Costs") are deducted, the remaining money will be distributed among the class members who do not opt out of the agreement. (*Id.* at 10–11, ¶35). This process is opt-out: class and subclass members who do not affirmatively object or otherwise remove themselves from the settlement will receive a payout from the fund. (*Id.* at 10, ¶33).

(Dkt. 72 at 2–3).

The Court further summarized the allocation of the settlement fund:

> The proposed settlement creates a common fund of $1,050,000. (Dkt. 65-1 at 9). After discovery of the underlying data, which included millions of data entries for employment records, and accounting experts' review of that data, "the amount generated by the common fund reflects 100% recovery for all unpaid wages based on Plaintiff's theories and assumptions—i.e., the Class's breach of contract theory—and 93.79% of the amount of statutorily enhanced damages that could be recovered by the Subclass based on Plaintiff's theories and assumptions, which would require the Subclass to overcome [Defendant's] good-faith error defense to enhancement." (Dkt. 66 at 14). As such, the parties contend "the relief provided to the Class is significant." (*Id.*). Pursuant to the agreement, each class member would receive the calculated relief, "less a proportionate share of the litigation costs, modest incentive award (just 0.476% of the common fund), class counsel fee, and cost to administer the settlement." (*Id.*). Likewise, for the subclass, "each member w[ould] be allocated an amount reflecting 93.79% of the maximum statutory enhancement—i.e., double damages—based on Plaintiff's theories and assumptions" less the applicable fees and costs. (*Id.* at 14–15).

(Dkt. 72 at 9–10).

The Court directed the sending of notice to the members of the class and subclass and scheduled a fairness hearing. (*Id.* at 13–14).

## II.     Proceedings Since Preliminary Approval

At the time the Parties sought preliminary approval, definitions of the class and subclass included 2,428 members and 1,961 members respectively. Because the definitions extended to the date of preliminary approval, there were 101 additional persons who now meet the definition of the Class and Subclass, expanding the Class to 2,529 members and the Subclass to 2,062 members.

### A.     Notice Provided to Absent Class and Subclass Members

Notice was provided to the class members through Atticus Administration as the Administrator, consistent with the Court's preliminary approval Order. (Dkt. 72 at 13). As reflected in the attached Declaration of Bryn Bridley:

4. On August 22, 2025, Atticus received data file from Defense Counsel that collectively contained the name, mailing address, social security number, employee ID number, employment status, and the damages calculations and settlement payments of 2,529 current or former hourly employees of GXO Logistics Supply Chain, Inc. ("GXO" or "Defendant") who worked at any time from September 12, 2021, to August 1, 2025 ("Class Period") at the Clayton, Indiana facility ("Plaintiff Class"). The data further identified that 2,062 of the Plaintiff Class members had not been involuntarily separated from their employment with GXO prior to April 3, 2025 ("Plaintiff Subclass") (collectively the "Class Data," or "Class Members").

5. Atticus reviewed the Class Data and worked with Defense Counsel to resolve the three (3) incomplete records identified. The final Class Data file contained 2,529 unique Class Member records. Prior to mailing Notice, the Class Data was processed through the National Change of Address (NCOA) database maintained by the United States Postal Service (USPS). This process provides address changes for anyone who has filed a change of address form with the USPS to ensure delivery accuracy.

6. On September 8, 2025, the Notice was sent in English and Spanish by U.S. first class mail to 2,526 Class Members for whom mailing addresses were included in the original data files received. Atticus received address information from Defense Counsel and mailed the remaining three (3) Notices on September 10, 2025. The Notice explains the terms of proposed Settlement and who is included, Class Members' rights and options and the deadlines by which those rights had to be exercised, how the Settlement Fund would be allocated and the basis for Class Member awards, information on Class Counsel, and the Fairness Hearing. A true and correct copy of the Notice in English and Spanish is attached to this declaration as Exhibit A.

7. Of the 2,529 Notices mailed, 438 were returned to Atticus as undeliverable. Eleven (11) of the returned Notices included forwarding information from the USPS and were promptly remailed to the addresses provided. Four hundred sixteen (416) of the remaining undeliverable records were sent to a professional service for address tracing. Alternate addresses were found for 373 records and were not found for 43 records. Notices were promptly remailed to the 373 addresses obtained through trace. Forty-nine (49) of the remailed Notices were returned to Atticus a second time. Eleven (11) undeliverable records were not traced for address updates because they were received at Atticus after, or without sufficient time to trace and remail the Notice prior to the exclusion request and objection deadline. These records and those associated with any additional undeliverable Notices received will be traced in advance of the award distribution. In total, 2,426 Class Members or more 95.93% of the Settlement Class successfully received Notice by mail.

(Dkt. 77-1).

### B.      Report of Exclusions and Objections

As the attached declaration of Bryn Bridley reflects, there were no timely objections submitted and only a single class member, Chad Troutner, exercised the right to opt out of the settlement class. (Dkt. 77-1 at ¶9); (Dkt. 79).

### C.      Plan of Allocation of Settlement Funds

Subject to the Court's approval of the contemporaneously filed *Motion for Final Approval of Class Counsel's Attorneys' Fees, Costs, and Expenses*, (dkt. 78), the Settlement Fund of $1,050,000 shall be allocated as follows:

| | |
|---|---:|
| Total Fund to Class and Subclass Members | $672,780.55 |
| Class Representative Incentive Award | $5,000.00 |
| Litigation Costs and Expenses | $4,219.45 |
| Claims Administrator (Atticus) Costs | $18,000.00 |
| Class Counsel Fee | $350,000.00 |
| **Total Settlement Fund** | **$1,050,000.00** |

Distribution of the fund to each Class and Subclass member is in accordance with each member's individual losses as calculated and reflected in the attached spreadsheet, which mirrors Exhibit A to the Settlement Agreement updated for the additional 101 Class members. (Dkt. 77-2).

## III.   Argument and Legal Analysis

Class-action settlements are "a three-step process." (Dkt. 72 at 3). First, as the Court has already done, the Court must preliminarily approve settlement terms. Second, once approved, notice is sent to the absent class members and a fairness hearing is conducted, which is currently scheduled to occur on December 10, 2025. (Dkt. 75). Finally, "the court approves the settlement for good." (Dkt. 72 at 3). With no objections having been timely filed, a single opt out exercised, and relief that amounts to recovery of 100% of alleged damages based on Plaintiff's theories and

assumptions for each Class member, prior to costs and fees for recovering those amounts, and

amounts to more than 90% of recovery based on Plaintiff's theories and assumptions of all

possible statutory enhancements for the Subclass members, less costs and fees, the Court should

grant final approval, award the modest $5,000 class representative incentive award to Lorri

Walton Osibodu, and, for the reasons separately set forth in the *Motion for Final Approval of*

*Class Counsel's Attorneys' Fees, Costs, and Expenses*, (dkt. 78), approve the requested attorney-

fee allocation to class counsel.

### A.      The Court Should Grant Final Approval

"Judicial policy favors voluntary settlement of class-action cases." *Ind. Prot. & Advocacy*

*Servs. Comm'n v. Comm'r, Ind. Dep't of Corr.*, No. 1:08-cv-01317-TWP-MJD, 2016 U.S. Dist.

LEXIS 38418, at *2 (S.D. Ind. Mar. 24, 2016) (Pratt, J.); *accord EEOC v. Hiram Walker & Sons,*

*Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985). Class-action settlements are governed by Rule 23(e)

of the Federal Rules of Civil Procedure. *Kaufman v. Am. Express Travel Related Servs. Co.*, 877

F.3d 276, 284 (7th Cir. 2017).

> Final approval of a class action settlement is governed by Federal Rule of Civil
> Procedure 23(e)(2), which requires that the Court find the settlement "fair,
> reasonable, and adequate." In doing so, the Court considers whether:
>
> (A) the class representatives and class counsel have adequately represented the
> class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the
> class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

*Zachery v. Javitch Block LLC*, No. l:22-cv-02261-JRS-MKK, 2025 LX 405271, at *6, 2025 WL 2802912 (S.D. Ind. July 28, 2025) (Klump, M.J.).

In issuing its preliminary approval of the proposed settlement, the Court previously considered and analyzed the Rule 23(e)(2) factors. (Dkt. 72 at 7–13). Since that time, there have been no new developments to undermine the Court's prior conclusions. *See*, *e.g.*, *Zachery*, 2025 LX 405271, at *7.

***Adequate Representation.*** Where, "Class Counsel achieved an excellent recovery on behalf of the classes and collective" the adequacy of representation factor "weighs in favor of final approval." *Adams v. Aztar Ind. Gaming Co., LLC*, No. 3:20-cv-00143-MPB-MJD, 2023 U.S. Dist. LEXIS 181318, at *11, 2023 WL 6536785 (S.D. Ind. Aug. 11, 2023) (Brookman, J.).

***Arm's Length Negotiation.*** This settlement was the product of arm's length negotiations facilitated by experienced mediator William Baten and resulting in substantial compensation for the Class and Subclass. This is the quintessential scenario in which the arm's length negotiation prong of the analysis is satisfied. *See*, *e.g.*, *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) ("The settlement was reached through extensive arm's-length negotiations with an experienced third-party mediator, the parties contentiously litigated a motion to dismiss, and the district court considered the other factors above.").

***Adequate Relief.*** The Court thoroughly analyzed the relief to be provided in its Order granting preliminary approval. (Dkt. 72 at 9–12). Further buttressing the Court's analysis is that

only 1 person of the 2,529 class members has chosen to opt out and not a single person has filed

an objection to the settlement. To the contrary, in the undersigned counsel's scores of calls and

emails received from absent class members, there was overwhelming enthusiasm and support

expressed for the settlement terms.

> ***Equitable Treatment of Members.*** Finally, the settlement dictates that each Class and

Subclass member is compensated based on the alleged amounts of underpayment based on

Plaintiff's theories and assumptions. (Dkt. 77-2). Where class members receive pro rata

compensation based upon actual, alleged wages owed, this factor supports final approval. *T.K. v.*

*Bytedance Tech. Co., Ltd.*, No. 19-CV-7915, 2022 U.S. Dist. LEXIS 65322, at *42, 2022 WL

888943 (N.D. Ill. Mar. 25, 2022) ("Generally, a settlement that provides for pro rata shares to

each class member will meet this standard."); *see*, *e.g.*, *Probst v. Eli Lilly & Co. Lilly USA LLC*,

No. 1:22-cv-01986-MKK-SEB, 2023 U.S. Dist. LEXIS 237168, at *13, 2023 WL 11051728

(S.D. Ind. Nov. 21, 2023) (Klump, M.J.); *Chambers v. Together Credit Union*, No. 19-CV-

00842-SPM, 2021 U.S. Dist. LEXIS 92150, at *6 (S.D. Ill. May 14, 2021).

> **B.       The Court Should Approve the Class Representative Incentive Award**

> "At the final approval stage, the Court considers two additional factors ...: the award of

attorney's fees to class counsel, and the fee paid to the class representative." *Zachery*, 2025 LX

405271, at *9. Contemporaneous to the filing of this Motion, Class Counsel has separately filed

the *Motion for Final Approval of Class Counsel's Attorneys' Fees, Costs, and Expenses*, (dkt.

78), which addresses the allocation of attorneys' fees, costs, and expenses. As to the class

representative incentive fee, $5,000 is sought for the efforts of Lorri Walton Osibodu.

> Class representative "incentive awards are commonly awarded to those who serve the

interests of the class." *Knox v. Jones Grp.*, No. 15-cv-1738 SEB-TAB, 2017 U.S. Dist. LEXIS

146049, at *7, 2017 WL 3834929 (S.D. Ind. Aug. 31, 2017) (Baker, M.J.) (citations omitted). Such "awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Id*. (citations omitted). "It is also widely recognized that class representatives shoulder direct and indirect risk—should a suit fail, they may find themselves on the hook for costs or even fees." *Zachery*, 2025 LX 405271, at *11.

In this instance, Plaintiff's efforts have been a sine qua non to obtaining relief on behalf of the class. (Dkt. 78-1 at 3 (¶¶14-15)). It was Plaintiff who initially identified the alleged problem, chose to retain counsel, and worked with counsel to effectuate the relief obtained. Moreover, the $5,000 award sought is what Judge Pryor recognized to be a "modest" amount commensurate with what "courts in this Circuit routinely approve[.]" *Simms v. Exacttarget, LLC*, No. 1:14-cv-00737-WTL-DLP, 2018 U.S. Dist. LEXIS 245963, at *29, 2018 WL 11416085 (S.D. Ind. Oct. 2, 2018) (Pryor, M.J.); *see also Coleman v. Sentry Ins. A Mut. Co.*, No. 15-CV-1411-SMY-SCW, 2016 U.S. Dist. LEXIS 149110, at *6 n.1, 2016 WL 6277593 (S.D. Ill. Oct. 27, 2016) (collecting cases).

## IV. Conclusion

For these reasons, Plaintiff Lorri Walton Osibodu respectfully requests that, after conducting the Final Fairness Hearing on December 10, 2025, the Court grant Final Approval of the Class Action Settlement Agreement, which was preliminarily approved on August 1, 2025 (dkt. 72), grant all requested attorney's fees, costs, expenses, (dkt. 78), award $5,000 to Plaintiff Lorri Walton Osibodu as a class representative incentive award, and order that Settlement Funds be distributed to all remaining Class and Subclass members as set forth in the approved settlement, and for all other just and proper relief.

Respectfully submitted,

/s/ Colin E. Flora
Colin E. Flora, #29914-49
PAVLACK LAW, LLC
50 E. 91st St., Ste. 305
Indianapolis, IN 46240
(317) 251-1100
(317) 252-0352 fax
Colin@PavlackLawFirm.com

Clifford M. Robinson, #30826-49
THE LAW OFFICE OF CLIFFORD
M. ROBINSON, LLC
205 W. Washington St., Ste. B
Rensselaer, IN 47978
(219) 964-4288
Cliff@CMRobinsonLaw.com

**Counsel for Plaintiff, Settlement Class
and Settlement Subclass**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed with the Court's ECF system on

November 7, 2025. Notice of this filing will be sent automatically by operation of the Court's

system to all counsel of record.

/s/ Colin E. Flora
Colin E. Flora